Good afternoon. May I please the court. My name is Philip Talmadge. I'm here representing Ruby Dell Harris. I'm joined by Philip Aaron, who is trial counsel in this matter. The case really revolves around two separate and distinct sets of factual issues. One set relates to an investigation of certain complainants about a hostile work environment to the City of Seattle, an investigation conducted by the Washington firm. Another set of facts revolves around the broadcast by King Broadcasting involving attendance by Ms. Harris at a national public forum. I don't get it. What it looks like to me is you've got a public official, you have the press criticizing a public official, and then you have the public official suing on a bunch of theories, but they all amount to variations of defamation. And after what the Supreme Court did to the law of defamation on public officials, I don't understand how you can make anything of it. I think that So they're wrong. So she was on her lunch break when she gambled in Las Vegas. So what? Under the Sullivan and its progeny. Your Honor, it goes beyond that. Let me quote a couple of passages from the broadcast that King broadcast with respect to Ms. Harris' No dispute that she was a public official. Oh, yes, we concede that she was a public official. But Harris couldn't have learned much. We caught her spending as much time here in the casino as she did in seminars. Harris, who makes roughly $80,000 a year, was being paid by taxpayers while she played. I just don't get it. You know, everything when I was up for confirmation, both times, district court and circuit court, every single thing that I read about myself in The New York Times was factually false. That's the way it is. Well, that doesn't say The Wall Street Journal was accurate, but every single fact in The New York Times was false, and it was designed to be harmful. Your Honor, I can't speak to the wonderfulness of the confirmation process, but I can speak to this. In this instance, King broadcast It's the same thing, isn't it? I mean, New York Times versus Sullivan, let them do that. We have the case, except we're talking in this case about a false light claim. This is a public official who attended a conference in Las Vegas. Inherently, in that Are you saying that New York Times versus Sullivan and its progeny do not extend to false light? No, in terms of actual malice, it does. But let me point out here that the fact that this is a public official makes it even more significant in terms of the false light. Think of it in these terms. This is an individual whose livelihood depends on this position. She's attending a conference, and King Broadcasting surreptitiously films her for three days. I doubt that in your confirmation process anybody was filming you for a three-day period at any place you were going. This was a circumstance where she was filmed for that time period. They were calling her room to see if she was there. The fact of the matter was, at most, under the evidence that was presented, she was gambling in the casino 45 minutes a day for some period of time when she was off on break. The implication of the broadcast was she was on a publicly paid, taxpayer-paid frolic and detour, when, in fact, the testimony she provided indicated that she was working in a room, and King knew this because they were calling her room and finding this out. She was there. That demonstrates, at least her theory, that the charge was false. I think it does. The accusation was false. Is that right? No, I think it does, Your Honor. In fact – Well, no. That's the point I'm trying to make. Yes, it goes to the falsity, for certain. Your position is that was false. Correct. What was the evidence that there was malice? I think the actual malice goes to the description of actual malice that's found in the Washington decision in the Heron case. There was another case involving King Broadcasting. You looked at the totality of the circumstances to understand the defendant's subjective intent. And when you look in the circumstances here, you have the nature of the intrusion that was taking place. You have the fact that it was false. You have the fact that – What do you mean by the nature of the intrusion, that it was a public official? Well, it was a public official, but King TV was riding up in the elevator with her to her room, surreptitiously filming her. They were filming her each and every day for three days, surreptitiously. They were making phone calls. That's what the media does. Well, I've been a public official as well, Your Honor, but I don't think I've ever seen a circumstance where the media was ever involved to this degree in making the kind of intrusions into Ms. Harris's life that they were doing. What does it matter? What case makes that matter? The Heron case, Your Honor. You looked at the nature of the investigation that was conducted. You looked at the circumstances, the totality of the circumstances. You looked at the fact that there was a press conference that disabused King of some of these errors, particularly with respect to those that pertain to the fact that she was working in her room, a very significant factor, in the evening sessions that she attended. Pardon? They know what she's doing in her room. There was – she said so in her press conference, and she testified so in her declaration to the district court. How do they know she's not having a private high-stakes poker game in her room? I mean, I don't know what people are doing in their hotel rooms. Well, in this particular case, they have the fact that there was a press conference that indicated that she was not doing that particular thing, that in fact she was – I mean, where she says at her press conference, I was diligently working in my room. I was diligently working, and you only need – How do they know she's telling the truth? Well, that suggests, Your Honor, that this is a case that then creates a genuine issue of material fact, that he said, she said, kind of circumstance that the prior fact should get a chance to resolve, rather than have this be resolved. That goes to falsity, doesn't it? It goes both to falsity and to actual malice, because the totality of the circumstances, Your Honor, I think are vital. You've indicated to me that the following her in the elevator and so forth was very intrusive. But wouldn't that demonstrate that they were trying to be accurate as to how she was spending her time? Well, I think it suggests that this was a very intrusive kind of investigation. It suggests that, in fact, KEEN TV was put on notice that there was a problem with what it was proposing to do from the press conference. There was an additional fact that doesn't jump out at you from the record, but I think is very significant, and that is that the reporter involved in the case, Duane Pullman, actually shared the broadcast, shared the information from the broadcast with Councilmember Jim Compton of the Seattle City Council before it was broadcast, that Councilmember Compton, who happened to be Ms. Harris' nemesis in this city government kind of dispute, had the benefit of the broadcast before anybody else in the public did. Look, what you need, I think, to show actual malice is not merely that they believed this councilman that didn't like Harris and didn't believe Harris. You need to show that they did not believe the councilman that had something against Harris, but knowing that he was lying to them, printed the lies anyway, or published the lies anyway. I think under Herron, in fact, Your Honor, what we need to know. They believe him. They're home free. What we needed to know, what the Court needed to have here was, in fact, in the context of Mr. Compton's participation, you have a hostile source, a source hostile to Ms. Harris, who is one of the sources, apparently, for the broadcast, for the instigation of this investigative broadcast by King Broadcasting. That's a factor, one of the factors. If CBS believes everything that some guy in Texas says about Bush's National Guard service and puts it out, and it turns out to be false and it turns out they shouldn't have believed him, I'm thinking that the likelihood is that CBS can be embarrassed, but that there is absolutely zero possibility of Bush successfully suing CBS for it. This goes to the problem of reckless disregard in the actual malice test in New York Times v. Sullivan. There has to be something that goes into the factual background, the totality of the circumstances, apart from knowing and reckless disregard. But you have to have a circumstance where you look at the totality of the situation to see if the broadcasting organization has information in its possession or conduct that it undertakes that would suggest that it appreciates the existence of problems with its broadcast and proceeds nonetheless knowing that the broadcast cast the individual in a false light. That's the Heron test. That's the test that this Court talked about in Eastwood. I think the totality of the circumstances. What was the evidence offered that King Broadcasting knew that there were problems with its report? It knew from the press conference that Ms. Harris held. It knew from the fact that it was sharing the- That's a self-serving press conference. Well, it's like the test talks about that it's a subjective test with the defendant. Did the defendant have any reservations about proceeding with the broadcast? That's a subjective test as well, Your Honor. What reporter is going to say, oh, well, I knew it was a terribly shaky kind of story, but I ran it anyway? So you're saying the media should not print something if the individual says what you're about to say is false or what you said is false? No. What I say is that it's part of the totality of the circumstances, the totality of the circumstances as to the subjective intent of the defendant. What did the defendant knew when it went ahead with the broadcast under the Heron standard under Washington law, looking at actual malice? And they knew that she said publicly that it was false. She said publicly it was false. And that's malice? Well, no. It's not alone, but part of the totality of the circumstances. Sharing the broadcast with a hostile source, the fact that there was an indication that the information they had was wrong and they went ahead nonetheless. What was the indication they knew it was wrong? From the press conference. She put them on notice that there was a problem with this information, that they should then at least have looked. The point is what the broadcast said was she was spending as much time in the casino as she was attending events in the conference. And she was the implication was she was off on a publicly played frolic and detour. And that was not true under the evidence that was presented. The problem I'm having with your case is I think you may well can demonstrate or demonstrated to the district judge that you can meet the preponderance of the evidence test on falsity. Well, I'm having difficulty going to the more serious problem of clearing convincing evidence of malice. I think it goes to that totality, Your Honor. That's all I can reiterate. It goes to the press conference itself. It goes to the nature of the intrusion. But the press conference really is their line. Well, it suggests that I was working in the evening. I was working in close contact with the commissioners. And when they say I wasn't, they lie. Yeah. And that goes to falsity. It does. But it also goes to the circumstances under which the broadcast cast her in a false light. And it goes to whether the defendant in this case proceeded with this broadcast, casting the plaintiff in a false light with actual malice. There has to be some set of facts and set of circumstances that suggest a reckless disregard. And the Heron case under Washington law talks about those. We established that with the press conference, with the sharing of the information with the hospital. Is there anything besides the press conference that tends to establish that the media defendants knew that what they were saying was false? That was the principal one, Your Honor. That was the principal one. And the press conference, by that you mean the plaintiff saying that's not true. Correct. And pointing out that she was, in fact, when King TV itself had to know, given the fact that Mr. Pullman testified that he called her room in this Las Vegas hotel three to four times today to find out if she was there. I just don't get why that does anything. I mean, hotel rooms, they can be doing anything. They can be reading the newspaper. I understand. They can be packing their suitcase. They can be having a private church service. They can be having a private poker game. I don't know what people are doing in their rooms. I could know somebody is in their room, and I have no idea what they're doing there. She testified in the ñ she indicated in the press conference and testified to the district court that I was working in close conjunction with the commissioners in Seattle on commission business when I was contacted in my room. She was not out shopping. She was not out frolicking in the casino. She was not out acting, you know, as somebody who was on a tax-paid frolic and detour, but rather who was someone who was working. The false light goes to the fact that King TV indicated that this public official with taxpayer money was out shopping and gambling and doing all of these things that were illicit. She had free high-speed Internet. She could be in her room shopping on the net. Well, she could be, but the testimony in the record is different. The district court simply disregarded that and said, as a matter of summary judgment, that actual malice can't be demonstrated here. We believe that the totality of the circumstances requires the opportunity for example. Is your burden of proof clear and convincing evidence? It is indeed, Your Honor. So you have to have clear and convincing evidence that they knew what they were saying was false or recklessly disregarded evidence which would have inclined them to think that it was false. I do. Is that right? Correct. We acknowledge that that's the test. But we believe under the totality of the circumstances test the opportunity to present this information was something that she didn't have in this particular set of circumstances. Let me turn very quickly to the aspect of the case involving the city and the firm. Here you have a circumstance also involving false light, but also a duty to investigate. Under Washington law, the Tyner case in particular, there is a duty to appropriately investigate when there is a statutory direction to proceed with an appropriate investigation. Tyner was a circumstance involving investigation of child abuse allegations. In this particular case, as the city itself acknowledges, there is an affirmative duty on the part of the city to investigate allegations of hostile work environment. The investigation that was undertaken here was an investigation that was undertaken without a majority of the commission approving it. It was undertaken with a resolution that said that you couldn't go to an outside firm to investigate such circumstances. And then when the investigation was undertaken, despite a list of people to be contacted provided to the firm who was undertaking the investigation, they didn't choose to investigate any of those people provided to them by Ms. Harris, very similar to the circumstances in the Tyner case. We believe under these circumstances the district court acted prematurely in dismissing claims that Ms. Harris had against the city and against the Washington firm arising out of this duty to appropriately investigate, as well as holding her in a false light when you have an investigative report that was originally designed to investigate certain complaints involving hostile work environment that then morphed into a complaint that involved looking at the chief investigator of such complaints without any particular direction to do so and the problem of a lack of a quorum on the part of this commission to approve any such investigation. Thank you. Thank you, counsel. Please report. My name is Bruce Johnson. I'm representing King Broadcasting. Each of the three appellees hopes to take no more than five minutes as part of their argument. As the court notes, the chief issue here is really actual malice. Mr. Talmadge points to one portion of the record, the so-called press conference, which he claims formed the buttress of his case establishing clear and convincing evidence of actual malice. That appears on page 32 of the excerpt of the record. It's a one-paragraph statement by Ruby Dale Harris stating that Mr. Pullman attended a press conference where I provided documents in defense of accusations which were published in an article in the Seattle Times which was reported while I was in Las Vegas. Absolutely nothing to do with what happened in Las Vegas. As a matter of fact, also in the record at pages four and five, Mr. Pullman actually sought to ask Ruby Dale Harris what she had done in Las Vegas. What pages? This begins at the bottom of four but actually starts on the top of five. She's interviewed in the broadcast itself, and she says, what did I do? I brought back information on productivity, waste management, information on a – there was a speaker, Glenda Hatchett, who did some speaking. Wait a minute. I can't follow you because I haven't found the pages. This is the excerpt of the record offered by Ruby Dale Harris. Okay, I've got – Page five. I've got Ruby Dale Harris' excerpts, and I've got – And the top of page five, it's a quote from the broadcast itself where Ms. Harris states that she brought back information from the Las Vegas seminar, information on women on the move, that kind of information. So what did you do? You just go to what, seminars or something? Harris, their workshops, and also evening events, different events. Pullman, and you went to those and brought back information? Harris, yes, I did. Again, we only watched what Ruby Harris was doing during the daytime hours. What she did at night was not our business. We did try to talk with Harris about what she saw, about what we saw. She declined. That is the news conference that Mr. Talmadge raises as his sole point in support of establishing clear and convincing evidence of actual malice. The basic fact here is the plaintiff has not established evidence of actual malice with convincing clarity. As the district judge held when she dismissed the case, the plaintiff has not shown by clear and convincing evidence that King reporter Pullman or King knew that the broadcast included false information or that they recklessly disregarded warning signs that it included false information. And, of course, the fact that Ruby Dale Harris subjectively believes that she is doing fine and that she is simply going out and gambling on her own, quote, break, unquote, whatever that is, or on her own, quote, lunchtime, unquote, whatever that is, is utterly irrelevant to the actual malice calculation. That turns on what the defendant knew, not what the plaintiff believes. And, therefore, we ask that the court to affirm the judgment below. Thank you. Thank you, counsel. Good afternoon. I'm Jennifer Bucher. I represent the city of Seattle and the individual city defendants who are not parties to this appeal. I'd like to correct one thing that was said in the appellant's opening argument, and that's that the city resolution says when ordering an investigation, you cannot go to an outside investigation, outside investigator. That's not, in fact, true. I'm sorry. I missed some of your words. The appellant said in opening argument that the resolution of the city for their procedures for investigating hostile work environment complaints prohibits them from going to an outside investigator. That's actually not true. So there was a specific provision that said in the case of a complaint against a department head that the alleged harasser shall be notified by the appointing authority that there will be an investigation and the appointing authority will go to an outside investigator. That was changed to make the language a little more general and permissive. So now that it says an investigation shall immediately commence and the investigator shall be an experienced investigator, I'm not quoting it accurately, but the gist of it is that an experienced investigator will be appointed. It just says nothing about an outside investigator no longer being allowed. So the language was changed, but not to prohibit an outside investigator from coming in and handling these sorts of complaints. All it did was make the language more general and permissive. The only issue Ms. Harris raises on appeal with respect to the change in the language is the person has to be experienced, but it doesn't say whether they're inside or outside. That's correct. Specifically what it says is the appointing authority or designee shall be responsible for designating an experienced investigator to immediately commence an investigation of the complaint. And it doesn't say anything more about who that investigator should be. Now, the only piece of evidence that Ms. Harris relies on for her argument that there's an issue of fact that should have precluded summary judgment is this alleged letter from Mr. Bastos, James Bastos, one of the PSCSC commissioners. That letter was never authenticated. It's a piece of inadmissible hearsay evidence that can't be used on summary judgment. So even if all of her other arguments are right, there's simply no evidence to support it, and summary judgment can be granted on that basis alone. But the common law quorum rule just simply doesn't apply here. This was not a body who was acting collegially in furtherance of its mission, which is to hear appeals by its personnel, uniforms, fire and police officers. It was investigating an internal complaint made by employees against Ms. Harris and other employees within the commission that they were being harassed, the hostile work environment had been created, that they had taken those complaints to Ms. Harris who did not sufficiently handle them, that she ignored their concerns, did an inadequate job of investigating their complaint, so they took it above her head to the commissioners. That's not a collegial act by a collegial body where the common law quorum rule should even apply. And all of the cases applying the rule are in the context of a collegial body, the three judges on the panel making a decision on a case. That would be a collegial action. If you had a law clerk who made a complaint of sexual harassment, you can't get around the requirement that's in city, state and Federal law to do a prompt investigation of that complaint by refusing yourself from the vote to undertake an investigation or by voting against the investigation. That's what Ms. Harris would like to have happen here. The two – there are only three commissioners on the public safety system. Do we have to get to this issue if we accept your argument that it was a permissible investigation? You don't. They're saying it wasn't – was not a permissible investigation because of this common law quorum rule. So that is the essence of her argument. And this argument was raised for the first time on appeal. If you look at the briefing and the summary judgment briefs, there was never a mention of the common law quorum rule. So this is the first time that it has come up on appeal, so you don't even have to consider it to that extent. So in light of the strong rules that are set forth both in city, state and Federal law and policy, the common law quorum rule can't be used to trump those policies that are there to prevent harassment and to prevent it from continuing. So we ask you to affirm the district courts for one. Thank you, counsel. Thank you. May it please the Court. Jerry Sale here for the Washington Firm defendants. That's the Washington Firm and the individual defendants associated with the Washington Firm. The Washington Firm was asked by the city to conduct an investigation into hostile and was also asked while conducting that investigation to comment and evaluate the managerial issues relating to Ruby Dell Harris' work at the commission. I note that in the reply brief, appellant chides us for failing to discuss where that authority came from. I don't understand why you were chided for that. In the opening brief at page 7, they said exactly what I just said to you, and that is that there was an investigation that the Washington Firm was asked to do into both the hostile work environment and also into the managerial issues. The firm did that, interviewing any number of people, and concluded their investigation by determining that they did not have sufficient evidence to show a hostile work environment but that there were managerial problems, including the handling of the hostile work environment complaint. The firm submitted a confidential report to the city attorney. There's no dispute about that. Ms. Harris asserts against the firm a single issue in this appeal, and that's against the Washington Firm defendants, I should say, a single issue, and that's that because they chose not to talk with certain witnesses identified by Mrs. Harris, that they therefore acted with actual malice, defeating the civil immunity that was granted to them. They concede that they must show in this case, in order to prevail, that there was actual malice, meaning they knew what they were saying was false or that they acted with reckless disregard of the falsity of something they said, and they must prove that by clear and convincing evidence. I'd like to make four quick points about that, not necessarily in the order of their importance. The first one is that while conceding and stating the issue exactly correctly in their brief, the plaintiff then mischaracterizes what the question is and states that there's a fact question concerning whether or not the interview that was the investigation that was conducted was negligent. But this is a case of actual malice. The cyander in that is intent or recklessness. This is not a negligence case, and you couldn't prove the actual malice by proving that the investigation was negligent. There certainly is no claim for negligent investigation. There's no cognizable claim for negligent investigation in this State, and we're really talking about actual malice. They missed the point. Is there any difference between investigation and defamation or false light? Between investigation and? I mean, is there any different body of law to be applied to the investigation as opposed to defamation or false light? Not at all, I think. What they're saying. There is simply no tort of negligent defamation. There's simply no tort of negligent defamation, nor is there more. Well, I think you can have a negligence standard in defamation. What we're looking at is the privilege that applies, and that's where the actual malice comes in. No, you can't. Negligence is totally immaterial. I stand corrected. At any rate, if it's false, it's false. This is only. But if the person's a public figure, it just doesn't matter unless there's actual malice. You're correct, Your Honor. I was looking at the defense particularly, but you're absolutely correct in regard to that. What's really happened here is they recognize and state all the rules correctly and what they have to prove, but then in the course of the argument, they try to change it into a negligence standard, and I simply want to draw the court's attention to that because what they have to show is intent or recklessness, and they don't really attempt to do that at all. The next point. Is there any separate Washington tort of negligent investigation as opposed to just application of the Washington torts of defamation and false light? Are these statements made by an investigator? Although I cannot remember the case that's cited in our brief, I believe it's stated affirmatively that there is no Washington case for negligent investigation. You cannot make such a claim. The second point I want to make, and it's already been made by the court, and that is that it's a clear and convincing standard that they must show. They must show not just something, but they must show something that would convince a trial, a fact finder, by clear and convincing evidence of actual malice. Considering that there's nothing there whatsoever, they certainly don't meet the clear and convincing standard. The third point I wanted to make briefly is that Plaintiff has not established or even tried to establish that there's any falsity. They've not pointed to anything in the report of the Washington firm that's false. They, therefore, cannot prove knowledge of falsity. There's nothing to have knowledge of, nor can they prove reckless disregard of falsity because there's nothing to show false there. So their claim completely fails for the reason that they've never even tried to establish that there's anything false in that report. And the fourth point I would like to make is regardless of this, although that's the only issue raised on appeal, there are additional bases upon which summary judgment should be granted for the Washington firm defendants, and that is they haven't proved the elements of any of their claims. They haven't proved falsity for defamation. They haven't proved as to the Washington firm any privacy tort. All the Washington firm did was evaluate her job performance and the hospital environment question and reported that to her employer. There's no false light. There's no privacy tort involved. There's no outrage. There's nothing in regard to anything that was done by the Washington firm that could in the least way be considered an offense against civilized society, necessary for outrage, nor is there any indication of severe emotional distress. And in regard to RICO, there are no predicate acts, much less two predicate acts in regard to the Washington firm. So as an additional basis, even if the immunity did not apply, they have not proved any of their claims against the Washington firm. For those reasons, we would ask that the trial court's dismissal of the Washington firm defendants be affirmed. Thank you. Thank you, counsel. Very briefly in response, Your Honor. The first is with respect to Mr. Sale's statement that there is no cause of action for negligent investigation under Washington law, that is simply incorrect. What case? Tyner v. Department of Social and Health Services cited in our brief. In that particular case, it was a case of whether or not the allegations of child abuse running to a father had been appropriately investigated by the Department of Social and Health Services. And the Washington Supreme Court indicated that in the context of a statute that confers a duty upon the state agency to appropriately investigate instances of child abuse, that a cause of action is stated for negligent investigation in the circumstance where a father's situation is not adequately investigated by the agency. That's exactly what you have here. You have a resolution that confers a specific duty by the city upon its officials to conduct workplace, hostile workplace investigations, just like the statute existed in the Tyner case, and that duty was breached in this particular set of circumstances. We have a situation involving the city where there is no contract, there is no indication of a vote now. The allegation by the city is that they don't need to have a vote, they don't need to meet any quorum requirements, that the commission can act through its individual commissioners to do whatever it wants. The problem with that argument is the quorum issue was raised all the time in the case. The district court's order on summary judgment involving the city specifically addresses the question of whether a quorum was present and whether a private cause of action was stated for it. What would it matter if the investigation did not produce anything that was maliciously defamatory? Well, the problem with that argument is, Your Honor, the original investigation was asked to look at what the workplace complainants had said about the hostile work environment. The report doesn't even speak to that. They decided, well, we can't investigate, we can't get a statement from the complainants, so we're going to drop that, and the only thing we're going to do is we're going to focus on Ms. Harris. So the basis for alleging that she inappropriately responded to workplace environment complaints, they haven't even made any findings regarding the validity of the workplace environment problems. It's very difficult to see how this report can be complete when the very basis for the original report. If a lawyer calls a detective and says, I think an employee of mine is sexually harassing subordinates, could you ask around and report to me on whether it's true, and the detective comes back and says, no, but we learned that your employee is embezzling your money, and that's true, that would be tortious? No. It was false, but the investigator did not know it was false and did not recklessly state it. There was evidence that was justifiably relied on by the investigator in reporting the embezzlement. All of that's interesting, Your Honor, but it's a different set of circumstances. Why is it different? Because you have a specific resolution from the city involving hostile workplace kinds of investigations. That was my hypo. But you have the specific investigation here, and there was no finding of any hostile workplace because the complaint. That was also my hypo, trying to find out why it's different. Because in this particular set of circumstances, you don't have the kind of criminal, the broad-based criminal investigations, a narrow investigation authorized specifically by this particular commission to its employees as to what must take place. It's not the same set of circumstances. The investigation, they go out, it's a public body without a public meeting, without a public contract, apparently without a vote, authorizing an investigation into an employee, and then the basis for the investigation, which was the complaining individuals regarding a hostile workplace environment, no report is made, and they only focus on this particular individual. A completely different scenario in terms of what the investigation was and what they were obliged to do under their duty under the city ordinance. A different set of circumstances entirely. Thank you. Thank you, Counsel. Harris v. City of Seattle is submitted.
judges: Browning, Alarcon, Kleinfeld